UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT HAUG and ANITA HAUG,

    Plaintiffs,

v.       CAUSE NO. 3:25cv314 DRL-SJF

TED BIERLY and Unknown Persons,

    Defendants.

## OPINION AND ORDER

Following a years-long battle over the public's ability to access a so-called beach on their property, Robert and Anita Haug sued Ted Bierly and certain unknown defendants for assault and battery, intentional infliction of emotional distress, malicious prosecution, and defamation. Mr. Bierly moves to dismiss the emotional distress and malicious prosecution claims under Federal Rule of Civil Procedure 12(b)(6). The court denies the motion.

## BACKGROUND

The court takes the well-pleaded allegations and reasonable inferences from the complaint as true when deciding this motion. In 2016, the Haugs bought waterfront property in Starke County, Indiana [1 ¶ 7]. At the time, they were assured by advertisements they would own the land to the water's edge, and nothing suggested otherwise, they say [*id.* ¶ 10]. They spent several years improving the unkempt property, which included tearing down and rebuilding the home [*id.* ¶ 8-9]. The idea was for Mr. Haug's mother to live there [*id.* ¶ 9].

Their plans hit a snag in 2022 when county officials and community members began claiming portions of their property was a beach. County officials tore up the grass and dumped and raked sand into the yard, an area Starke County asserted was in fact a beach [*id.* ¶ 13].

Members of the public began showing up asking to swim at "the beach," despite the Haugs having no knowledge of any claim their property contained a beach [*id.* ¶ 11-12]. They viewed this as a safety and insurance risk, as the property contained no signage or a lifeguard [*id.* ¶ 12].

The Haugs protested the public's requests, which they say led to a group of individuals, including Mr. Bierly, coordinating on the internet and social media to drive the Haugs off the property [*id.* ¶ 14, 32]. They allege this conduct began with name-calling but escalated to organized activities with a "mob mentality," such as campaigns for unknown people to take selfies at the property, loud and noisy harassing activities at the property (*e.g.*, suggestions of a karaoke night), parking in front of an access area to block the Haugs in, making rude gestures, obscene commentary, and acting aggressively towards the couple, and contacting the Department of Natural Resources to report false accusations against both Mr. and Mrs. Haug [*id.* ¶ 15, 34-38, 46]. By summer 2023, according to the Haugs, unknown people threw nails into their driveway, altered the lug nuts on the couple's car so as to potentially cause a serious accident, and discussed ways to fabricate a criminal charge against them [*id.* ¶ 16]. The Haugs allege that Mr. Bierly "was a contributor to the online discussion on multiple occasions" and wrote posts online trying to find a way to have Mr. Haug arrested or fined [*id.* ¶ 41, 45]. They allege this conduct caused them emotional distress [*id.* ¶ 42].

Much of the tension came to a head on April 12, 2023. While outside taking pictures of a parked car blocking a portion of his property, Mr. Haug noticed a county official placing a guardrail in a manner that would make it difficult for him to get to the lower part of his driveway [*id.* ¶ 18-20]. Mr. Bierly showed up at some point because, as the Haugs allege, he was coordinating some of the activities on the property with Starke County [*id.* ¶ 22]. Mr.

Bierly then approached Mr. Haug "angrily and in an aggressive manner," which included shouting and cursing [*id.* ¶ 23]. Mr. Haug raised his phone to take a photo of Mr. Bierly in an attempt to dissuade him, but Mr. Bierly instead, as alleged, slammed the phone out of Mr. Haug's hand and began to "violently attack" Mr. Haug "with repeated strikes from his hands and feet" and also threatened Mr. Haug with a large rock [*id.* ¶ 24, 28]. As pleaded, the attack caused Mr. Haug an injury to his right shoulder, which eventually required surgical replacement in early 2024 [*id.* ¶ 30].

Following the confrontation, the Haugs claim that Mr. Bierly called the police and intentionally lied, stating Mr. Haug was the initial aggressor [*id.* ¶ 48]. The Haugs say this statement was false because Mr. Bierly knew he in fact was the initial aggressor [*id.* ¶ 48, 51]. Mr. Haug was subsequently charged with criminal battery [*id.* ¶ 49]. The charge was ultimately dismissed, but not before Mr. Haug was fired from his long-held job when he told his employer about a pending hearing in connection with the charge [*id.* ¶ 53]. As alleged, Mr. Haug lost his job as a direct and proximate result of Mr. Bierly's statement to the police, which Mr. Bierly allegedly made "solely out of malice" [*id.* ¶ 57-58].

The Haugs filed suit against Mr. Bierly and "unknown persons" to recover for assault and battery, intentional infliction of emotional distress, malicious prosecution, and defamation. Mr. Bierly filed a motion to dismiss. He initially sought dismissal of the complaint in its entirety, arguing in part that the assault and battery, emotional distress, and defamation claims were time-barred. The Haugs responded, and Mr. Bierly then conceded that the assault and battery and defamation claims were timely. Mr. Bierly today requests the court dismiss the emotional distress and malicious prosecution claims only.

STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quotations omitted).

DISCUSSION

A. *Unnamed Defendants.*

Before proceeding to the merits of this motion, by way of housekeeping the court addresses the addition of "unknown persons" as defendants. Though the complaint doesn't clearly specify which claims are asserted against which defendant, it appears the Haugs assert an emotional distress claim not only against Mr. Bierly, but also against these other unnamed defendants [1 ¶ 31-53].

The court has an independent obligation to ensure its subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Smith v. Am. Gen. Life & Accident Ins.*, 337 F.3d 888, 892 (7th Cir.

2003). Though federal question cases may permit plaintiffs to name unknown defendants because jurisdiction doesn't depend on the parties' citizenship, *see Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); *Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022), diversity cases require a more nuanced analysis.

Under 28 U.S.C. § 1332, diversity jurisdiction must be complete, meaning no plaintiff shares a citizenship with any defendant. Unknown defendants are ordinarily forbidden in federal diversity suits. *Howell by Goerdt v. Trib. Ent. Co.*, 106 F.3d 215, 218 (7th Cir. 1997). Sometimes an exception will apply—for instance, when unknown defendants are nominal parties and merely placeholders "in the event that during discovery [the plaintiffs] identify any additional defendants [they] wish[] to add to the suit." *Moore v. Gen. Motors Pension Plans*, 91 F.3d 848, 850 (7th Cir. 1996). In such cases, their citizenship "can be disregarded for diversity jurisdiction." *Dalton v. Teva N. Am.*, 891 F.3d 687, 690 (7th Cir. 2018) (citing *Moore*, 91 F.3d at 850). But it would be difficult to classify the unknown defendants merely as nominal when the Haugs want damages from them for the emotional distress they caused.

And, in truth, unnamed defendants serve no real purpose. "It is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed. R. Civ. P. 15, nor can it otherwise help the plaintiff." *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (citation omitted). The court has the inherent power to dismiss an unnamed defendant *sua sponte*. What the Haugs naturally can do is proceed with discovery and move to amend their complaint later in the litigation when (or if) they learn the identity of a potentially liable defendant. *See Troya v. Wilson*, 807 F. Appx. 556, 560 (7th Cir. 2020) (court's decision to dismiss unnamed defendants without prejudice is permissible so

5

long as the plaintiff has an opportunity to amend later and name the defendants). The court thus dismisses the unknown defendants without prejudice.

    B. *Emotional Distress Claim.*

To bring a successful claim of intentional infliction of emotional distress, the Haugs must allege facts from which it could be plausibly said that the defendants (1) engaged in extreme and outrageous conduct, (2) that intentionally or recklessly (3) caused (4) severe emotional distress to them. *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 691 (Ind. 1997); *State v. Alvarez*, 150 N.E.3d 206, 218 (Ind. Ct. App. 2020). Intentional infliction of emotional distress exists when conduct "exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind." *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009) (quoting *Lachenman v. Stice*, 838 N.E.2d 451, 457 (Ind. Ct. App. 2005)).

The Haugs allege Mr. Bierly engaged in organized campaigns to harass them and drive them away from the property. They say his conduct, which started as online posts but escalated to coordinated events to violate their privacy, create noise nuisances, and commit vandalism, caused them emotional distress. Mr. Bierly challenges both the timeliness of the claim and the sufficiency of the allegations.

First, Mr. Bierly alleges the emotional distress claim is time-barred. Under Indiana law, a two-year statute of limitations applies to claims for injury to persons or character. Ind. Code § 34-11-2-4; *Johnson v. Blackwell*, 885 N.E.2d 25, 40 (Ind. Ct. App. 2008) (emotional distress claim subject to two-year limitations period). The statute of limitations starts running "when the plaintiff discovers, or in the exercise of ordinary diligence, could discover, that he has sustained an injury caused by another person's tortious act." *Kissinger v. Fort Wayne Cmty. Schs.*,

293 F. Supp.3d 796, 811 (N.D. Ind. 2018) (applying Indiana law). At the pleading stage, dismissal of claims for untimeliness is warranted "only if the complaint states facts that, on their face, indicate the complaint was filed after the statute of limitations period expired." *State v. Alvarez ex rel. Alvarez*, 150 N.E.3d 206, 216 (Ind. Ct. App. 2016). One need not anticipate and plead around this defense—merely not plead oneself out of court.

The Haugs say Mr. Bierly began "conspiring" against them in "early 2022;" and, by June that year, the group "began performing activities intentionally designed to annoy or harass" them [1 ¶ 32, 34]. Mr. Bierly argues that the emotional distress claim is untimely because the Haugs waited until April 2025—nearly three years after the conduct began—to file their complaint. In response, the Haugs contend that the pre-April 2023 conduct is timely under the continuing wrong doctrine and, even if not, that the alleged conduct that occurred between April 2023 and summer 2024 is.

Under Indiana law, the continuing wrong doctrine "applies when an entire course of conduct combines to produce an injury." *Fox v. Rice*, 936 N.E.2d 316, 322 (Ind. Ct. App. 2010) (cleaned up). The statute of limitations begins to run "at the end of the continuing conduct," *Doe v. United Methodist Church*, 673 N.E.2d 839, 845 (Ind. Ct. App. 1996), except that the doctrine "will not prevent the statute of limitations from beginning to run when the plaintiff learns of facts that should lead to the discovery of his cause of action even if his relationship with the tortfeasor continues beyond that point." *Fox*, 936 N.E.2d at 322.

As an initial matter, some of the alleged conduct (specifically, the alleged vandalism) occurred within the two-year period before the complaint. Mr. Bierly is incorrect that the *entire* emotional distress claim is time-barred just because *some* of the alleged conduct apparently

7

happened before April 2023. It may be, because the complaint was filed on April 14, 2025, that certain conduct before April 14, 2023 could be time-barred, but, at this pleading stage, the law "doesn't permit piecemeal dismissals of parts of claims." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis omitted). That is for summary judgment, not motions to dismiss. At summary judgment, the court can "identify each claim or defense—or the part of each claim or defense—on which summary judgment is sought" to winnow issues for trial. *Id.* (quotations and emphasis omitted). For today, the question is "simply whether the complaint includes factual allegations that state a plausible claim for relief." *Id.*; *see also Bilek v. Fed. Ins.*, 8 F.4th 581, 587 (7th Cir. 2021). The Haugs have stated one theory of timely relief.

Second, as to plausibility, Mr. Bierly argues that the alleged conduct attributable to him falls short of being extreme and outrageous. "Indiana requires conduct that is so extreme that it goes beyond all possible bounds of decency and would cause an average member of the community to shout, 'Outrageous!'" *Westminster Presbyterian Church of Muncie v. Yonghong Cheng*, 992 N.E.2d 859, 870 (Ind. Ct. App. 2013). The conduct "must be particularly deplorable to meet the extreme and outrageous requirement." *State v. Alvarez*, 150 N.E.3d 206, 218 (Ind. Ct. App. 2020); *Fox v. Franciscan Alliance, Inc.*, 204 N.E.3d 320, 329 (Ind. Ct. App. 2023) (conduct must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). Indiana courts "have been reserved" in granting relief on claims of intentional infliction of emotional distress. *Skinner v. Metro. Life Ins.*, 829 F. Supp.2d 669, 683 (N.D. Ind. 2010).

In support of their claim, the Haugs point to Mr. Bierly's online activity, alleged assault and battery towards Mr. Haug, and his allegedly false statements to a police officer to initiate

8

criminal charges against Mr. Haug.[1] The Haugs say they were emotionally distraught by the conduct, which was designed to harass them and to drive them from their property. These allegations, if accepted as true, plausibly describe conduct beyond the bounds of decency sufficient to sustain an emotional distress claim. An alleged bodily assault that causes a not insignificant injury followed by a false allegation to police that results in criminal prosecution would reasonably cause someone to express its outrageousness.

As a final note, Mr. Bierly's efforts to confine the emotional distress claim to only the alleged online harassment is misguided. That the same alleged conduct also underlies claims for battery and malicious prosecution reflects overlap, not duplication, and plaintiffs can plead alternative theories based on the same conduct or some of the same conduct even when later they might need to make an election of remedies or when later their recovery might need to be singular rather than duplicative. This point does not warrant dismissal at this preliminary stage of the litigation. *See Blasting v. Ford Motor Co.*, 2023 U.S. Dist. LEXIS 118537, 2-3 (S.D. Ind. July 10, 2023) (Sweeney, J.) (denying Rule 12(b)(6) relief when complaint alleged multiple theories for recovery on the same event because the "[c]omplaint is an adequate 'starting point'; narrowing the legal issues comes later"). The court declines to dismiss the emotional distress claim.

C. *Malicious Prosecution.*

The complaint alleges a malicious prosecution claim against Mr. Bierly for the battery charge initially filed against Mr. Haug. Mr. Bierly argues the claim should be dismissed.

---

[1] In their response brief, the Haugs also for the first time fancy whether Mr. Bierly was the unknown person who threw nails on their driveway and damaged their car's lug nuts. The court cannot rely on mere speculation—something merely guesswork or even just possible—to call something plausible. *See Iqbal*, 556 U.S. at 678.

9

Ultimately, to prevail, the Haugs would have to prove that (1) Mr. Bierly instituted or caused to be instituted an action against Mr. Haug; (2) Mr. Bierly acted maliciously; (3) Mr. Bierly had no probable cause to institute the action; and (4) the action was terminated in Mr. Haug's favor. *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005).

Mr. Bierly first argues the claim fails because he didn't directly or indirectly institute any legal action. Instead, he says, the decision to charge Mr. Haug with battery was that of the prosecutor. But Indiana courts have explicitly rejected this argument as a categorical defense to a malicious prosecution claim. In *Hall v. Shaw*, 147 N.E.3d 394 (Ind. Ct. App. 2020), for instance, a plaintiff faced criminal charges based on allegations made by private parties and then brought a malicious prosecution claim, which the defendants argued should be barred "because it was the prosecutor who made the final decision to file criminal charges." *Id.* at 402. The court rejected this theory as "overbroad" and declined the "invitation to adopt a rule that claims of malicious prosecution based on a criminal charge are absolutely barred." *Id.* at 404. Instead, the court held that such a defense applies only when "evidence of an intervening investigation establishe[s] that the authorities were the proximate cause of the prosecution, not the person or entity who initially alerted the authorities." *Id.*

Such evidence has not been presented, and could not be considered, at this pleading stage. Merely that Mr. Bierly was not the final decisionmaker in instigating the prosecution is insufficient today to justify dismissing the claim as a matter of law. *See id.* at 404-05; *see also Marshall v. Dvorscak*, 2025 U.S. Dist. LEXIS 129013, 17-18 (N.D. Ind. June 17, 2025) (applying

10

Indiana law) (plaintiff sustained a malicious prosecution claim when the complaint alleged a private defendant's actions caused the sheriff's office to investigate the plaintiff).[2]

Mr. Bierly next contends that the malicious prosecution claim fails because the complaint doesn't assert Mr. Haug's criminal prosecution was terminated in his favor. Though the charge was dismissed via a motion filed by the prosecutor, says Mr. Bierly, this doesn't amount to a favorable resolution, particularly because the charge was dismissed without prejudice.[3] According to Mr. Bierly's interpretation, a dismissal of the charges without prejudice equates to a dismissal, subject to the condition that charges may be refiled.

A favorable termination exists if it is inconsistent with guilt. *Duvall v. Kroger Co.*, 549 N.E.2d 403, 406 (Ind. Ct. App. 1990). "[W]ithdrawal of the proceedings by the person bringing them may constitute a favorable termination for purposes of . . . malicious prosecution." *Strutz v. McNagny*, 558 N.E.2d 1103, 1107 (Ind. Ct. App. 1990). However, not all dismissals qualify as favorable terminations. For example, when a proceeding is terminated "by agreement or settlement of the parties," such termination cannot be used to support an action for malicious

---

[2] Mr. Bierly attaches the police officer's probable cause affidavit to his brief to argue that the officer considered information beyond just what was said to him by Mr. Bierly. Generally, if a party attaches evidence outside the pleadings in a motion to dismiss, "the court must either convert [the motion] into a motion for summary judgment under Rule 56…or exclude the documents attached to the motion to dismiss and continue under Rule 12." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (citation omitted). Aside from judicial notice, there is a narrow exception: a dismissal motion can rest on critical documents, central to the claim and referred to in the complaint. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *188 LLC*, 300 F.3d at 735. Nowhere in the complaint do the Haugs mention or reference the affidavit. The malicious prosecution claim is based solely on statements the Haugs allege Mr. Bierly made to officers. Accordingly, the court won't consider the affidavit at this stage. *See also Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1076, 1081 (7th Cir. 1997) (judicial notice limited to facts not reasonably in dispute; Fed. R. Evid. 201(b) (a fact "not subject to reasonable dispute").

[3] The court takes judicial notice of the state court order dismissing *State of Indiana v. Robert Haug*, Cause No. 75C01-2307-CM-000001, which Mr. Bierly appended to his reply brief [10-1]. *In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (state court orders "are public records and appropriate subjects of judicial notice").

11

prosecution. *Wong v. Tabor*, 422 N.E.2d 1279, 1284 (Ind. Ct. App. 1981). Further, a dismissal premised on conditions attached to the dismissal and agreed to by the accused is not a favorable termination for purposes of a later malicious prosecution claim. *Duvall*, 549 N.E.2d at 406 (Ind. Ct. App. 1990).

The complaint alleges Mr. Haug's criminal case was dismissed pursuant to the State of Indiana's motion [1 ¶ 52], without indicating whether the dismissal was based on an agreement or stipulation between the parties. At this early stage of the proceeding, taking all inferences in the Haugs' favor—as the court must—dismissal at the State of Indiana's request is plausibly consistent with a favorable termination in Mr. Haug's favor and inconsistent with his guilt. *See Duvall*, 549 N.E.2d at 406; *see also Smith v. Bonnie Sloan Post No. 28 the Am. Legion Dep't of Ind.*, 2025 Ind. App. Unpub. LEXIS 832, 16-18 (Ind. Ct. App. July 15, 2025) (dismissal of criminal charge "in plaintiff's favor" when no evidence indicated plaintiff signed a plea agreement or had power over prosecutor's decision to request dismissal of the charge, prosecutor asked the court to dismiss the original action without prejudice "in the best interest of justice," and, "notably," charges were never refiled). The court thus declines to dismiss the malicious prosecution claim at this stage.

## CONCLUSION

Accordingly, the court DENIES Ted Bierly's partial motion to dismiss [7] and DISMISSES WITHOUT PREJUDICE the unnamed defendants listed in the complaint. The Haugs retain all claims against Mr. Bierly.

SO ORDERED.

August 28, 2025                              *s/ Damon R. Leichty*
                                             Judge, United States District Court