IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND

| | |
|---|---|
| ROBERT HAUG AND ANITA HAUG, )<br>　　　Plaintiffs, 　　　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　　) | |
| v. 　　　　　　　　　　　　　　　　　) | CASE NO. 3:25-CV-00314 |
| 　　　　　　　　　　　　　　　　　　　) | |
| TED BIERLY, 　　　　　　　　　　　) | |
| 　　　Defendant. 　　　　　　　　　　) | |

### BIERLY'S ANSWER, AFFIRMATIVE DEFENSES, JURY DEMAND AND COUNTERCLAIM

Defendant/Counterclaim Plaintiff Ted Bierly ("Bierly"), by and through undersigned counsel, respectfully submits his Answer and Affirmative Defenses to the Complaint of Plaintiff/Counterclaim Defendant Robert Haug and Plaintiff Anita Haug (collectively "Haugs") and responds to the allegations therein as follows:

### Jurisdiction and Venue

1.　　This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332(a)(1); 28 U.S.C. § 1332(c)(1).

　　**Answer:**　　**The allegations of paragraph 1 entail legal conclusions to which no response is required.**

2.　　Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and/or (3); 28 U.S.C. § 1391(c)(2); 28 U.S.C. § 1391(d).

　　**Answer:**　　**The allegations of paragraph 2 entail legal conclusions to which no response is required.**

## Parties

3. At all times relevant, Robert Haug was a United States citizen domiciled and residing in Iowa.

   **Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 3.**

4. At all times relevant, Anita Haug was a United States citizen domiciled and residing in Iowa.

   **Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 4.**

5. At all times relevant, Ted Bierly was a United States citizen domiciled and residing in Starke County, Indiana.

   **Answer:** **Bierly admits the factual allegations of paragraph 5.**

6. Both Plaintiffs, individually, meet the amount-in-controversy requirement of 28 U.S.C. § 1332(a).

   **Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 6.**

## Factual Background

7. In May 2016, Robert Haug and Anita Haug (collectively hereinafter "the Haugs") purchased a home located at 8025 N. Tippecanoe Dr., Walkerton, Indiana (hereinafter "the Walkerton Home").

   **Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 7.**

8. At the time of the Haugs' purchase of the Walkerton Home, the property was in a largely unkempt state.

**Answer:** **Upon information and belief, Bierly admits paragraph 8.**

9. The Haugs then spent several years improving the property, including removing the existing home and building a new home on the property for Robert Haug's mother to reside there.

**Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 9.**

10. At the time of the purchase, the Haugs were assured by the advertisements for the property that they would own the land to the water's edge and there was no signage or other indicia that this was not true.

**Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 10.**

11. After the Haugs completed many of their improvements, members of the public began to show up asking to swim at "the beach."

**Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 11.**

12. The Haugs were unaware of any claim that a beach resided on their property, particularly given the absence of any indication to the contrary during their ownership. Further, the Haugs were very concerned that this was a safety and insurance risk as there was no lifeguard and no signage.

**Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 12.**

13. The County of Starke, on or about Summer 2022, began to claim the land that the Haugs had been assured was their yard as a beach, tearing up their grass and dumping and raking sand into the area.

  **Answer:**  **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 13.**

14. When the Haugs protested this action, a group of individuals coordinated on various internet and social media sites to drive the Haugs off the property altogether.

  **Answer:**  **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 14. To the extent the allegations of paragraph 14 suggest or imply that Bierly "coordinated" any effort to "drive the Haugs off the property," those allegations are denied.**

15. Matters became far worse as the group of individuals went from mere name-calling online to actively harassing the Haugs in organized ways including but, not limited to:

  a. Organizing a campaign for beachgoers to take selfies on the portion of the property that was subject to disputed claims between the Haugs and the county of Starke (hereinafter "the Disputed Lakefront");

  b. Organizing loud, noisy activities at the Disputed Lakefront with the sole intent to harass the Haugs;

  c. Parking in front of the drive access area for the Haugs to block them in; and

  d. Making rude gestures, obscene commentary, and acting in an aggressive manner towards the Haugs.

  **Answer:**  **To the extent that the allegations of paragraph 15 suggest or imply that Bierly, himself, engaged in the conduct described, the allegations are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 15.**

16. By Summer 2023, matters had devolved even further to active vandalism with intent to cause serious harm to the Haugs including nails repeatedly thrown into their driveway, their car as lug nuts damaged in a way so as to potentially cause a serious accident, and active discussions of ways to try to fabricate a charge against the Haugs for any imagined crime.

> **Answer:** **To the extent that the allegations of paragraph 16 suggest or imply that Bierly, himself, engaged in the conduct described, the allegations are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 16.**

### Assault/Battery

17. Plaintiffs hereby incorporate rhetorical paragraphs 1 – 16 by reference as though fully set forth herein.

> **Answer:** **Bierly incorporates by reference as though fully set forth herein all answers to allegations of the Haugs' Complaint.**

18. On or about April 12, 2023, Robert Wayne Haug (hereinafter "Wayne") was at 8025 N. Tippecanoe Dr. when he observed that a vehicle had parked in a manner that blocked access to a nearby drive.

> **Answer:** **Bierly admits that, upon information and belief, Robert Haug was at or near the stated location at some point on the stated date. Bierly is without sufficient information to either admit or deny the remaining factual allegations of paragraph 18.**

19. Wayne took a photo of the front and back of the vehicle with the plate number as there had been several instances of people parking to block his and his neighbors' drives.

**Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 19.**

20. At the time, Wayne noticed that a guardrail was being moved by Starke County workers to a location that would cause a challenge getting into the lower driveway of his property.

**Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 20.**

21. When Wayne asked about the placement of the guardrail, he was told by a Starke County worker to go speak with Camire.

**Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 21.**

22. When Wayne returned, Ted Bierly ("Bierly") had apparently been called to the location as he was coordinating some of the activities on the Disputed Property with Starke County.

**Answer:** **Bierly admits that on the date in question Tom Camire requested that Bierly go to the location in question near the Disputed Property to see what was going on, as Haug had abruptly shown up at Tom's house complaining of certain activities by Starke County employees. Any other factual allegations of paragraph 22 are denied.**

23. Ted Bierly then approached angrily and in an aggressive manner, shouting at Wayne and cursing.

**Answer:** **Bierly denies the factual allegations of paragraph 23.**

24. When Wayne raised his phone to take a picture of Bierly in the hopes that it would dissuade the aggressor, Bierly angrily slammed the phone out of Wayne's hand and began to violently attacked Wayne with repeated strikes from his hands and feet.

**Answer:** **Bierly denies the factual allegations of paragraph 24.**

25. Wayne even managed to reflexively snap a photo when his hand clenched his raised phone as it was being hammered out of his hand by Bierly, capturing the blurry, but still recognizable initial attack.

**Answer:** **Bierly is without sufficient knowledge to admit or deny whether Wayne took any photograph as described in paragraph 25, but denies that it "captur[ed]" the circumstances alleged. Otherwise, Bierly denies the factual allegations of paragraph 25.**

26. After Bierly ceased his attack, Wayne retrieved his phone and snapped a final photo of Bierly walking away, wearing the same color clothing that is visible in the photo of the attack.

**Answer:** **Bierly denies that he attacked Wayne as alleged and/or implied in paragraph 26. Bierly is without sufficient information to admit or deny the remaining factual allegations of paragraph 26.**

27. Bierly kicked Wayne during his assault so viciously that Wayne's pants bore the imprint of the bottom of Bierly's boot after the encounter.

**Answer:** **Bierly admits only that he and Wayne were involved in a physical altercation in which Wayne was the aggressor and Bierly defended himself. Bierly denies that he "assaulted" Wayne, "viciously" or otherwise. Bierly is without sufficient information to either admit or deny any appearance of Wayne's pants after the altercation.**

28. After Wayne managed to fend off Bierly [*sic*] initial attack, Bierly picked up a large rock from the ground and menaced Wayne with it, placing Wayne in direct and immediate fear that Bierly intended to seriously harm or kill Wayne with it.

**Answer:** **Bierly denies the factual allegations of paragraph 28.**

29. Eventually, Wayne was able to talk Bierly into dropping the rock and was finally able to safely retreat.

**Answer:** **Bierly denies that Wayne "talked [him] into" doing anything and further states that it was Bierly who attempted to depart the location of the encounter notwithstanding that Wayne followed and attempted to provoke him. Bierly admits that eventually Wayne left him alone, "retreated" from the encounter, and was safe at all times. Any remaining factual allegations of paragraph 29 are denied.**

30. Due to Bierly's attack, Wayne's right shoulder came to be in constant pain and eventually had to be replaced in early 2024.

**Answer:** **Bierly denies that he attacked Wayne or, therefore, that any such attack caused Wayne any injury. As for any allegations regarding pain, injuries, or medical procedures Wayne might have experienced, Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 30.**

### Intentional Infliction of Emotional Distress/Harassment

31. Plaintiffs hereby incorporate rhetorical paragraphs 1 – 30 by reference as though fully set forth herein.

**Answer:** **Bierly incorporates by reference as though fully set forth herein all answers to allegations of the Haugs' Complaint.**

32. In early 2022, Bierly and Unknown Persons began conspiring online to come up with plans to harass the Haugs.

**Answer:** **As for himself, Bierly denies the factual allegations of paragraph 32. As for the "Unknown Persons," Bierly is without sufficient information to either admit or deny factual allegations of paragraph 32.**

33. These matters began harmlessly at first, with mere name-calling and questions about ownership of the Disputed Property, but quickly escalated.

**Answer:** **To the extent the factual allegations of paragraph 33 suggest or imply Bierly's personal involvement in the conduct described, they are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 33.**

34. By June 2022, the group turned to a mob mentality and began performing activities intentionally designed to annoy or harass the Haugs in an effort to get them to sell the property and abandon the region.

**Answer:** **To the extent the factual allegations of paragraph 34 suggest or imply Bierly's personal involvement in the actions alleged, they are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 34.**

35. The first such effort was started by the comment, "Take a selfie with the horror house in the background!" This was followed by many Unknown Persons taking pictures of themselves in front of the Haugs' home while on the Disputed Property. The desire was to invade the Haugs' privacy and harass or annoy them by taking dozens of photos of the Haugs' home and posting them online.

**Answer:** **To the extent the factual allegations of paragraph 35 suggest or imply Bierly's personal involvement in the actions or statements alleged, they are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 35.**

36. The next effort was an attempt to organize crowds onto the beach with groups of individuals suggesting a frequent karaoke night on the Disputed Property to create a noise nuisance for the Haugs.

**Answer:** **To the extent the factual allegations of paragraph 36 suggest or imply Bierly's personal involvement in the actions or statements alleged, they are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 36.**

37. During this second discussion, ominously, there is a first mention of violence, stating, "I think we should go down there and give [Wayne] a good starke county [*sic*] ass b--- right on the beach [*sic*] I'm sick of hear about this idiot [*sic*] I don't think this guy realizes that starke county [*sic*] has some crazy people around here."

**Answer:** **To the extent the factual allegations of paragraph 37 suggest or imply Bierly's personal involvement in the actions or statements alleged, they are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 37.**

38. From this point, the online mob of Unknown Persons began to increase their aggressiveness, posting about blocking portions of the Haugs driving access to their property and indicating a desire to cause a confrontation with the Haugs.

**Answer:** **To the extent the factual allegations of paragraph 38 suggest or imply Bierly's personal involvement in the actions or statements alleged, they are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 38.**

39. Throughout 2024, Unknown Persons, reasonably believed to be involved in the online mob, began vandalizing the Haugs' property, including throwing nails on the driveway repeatedly.

**Answer:** **To the extent the factual allegations of paragraph 39 suggest or imply Bierly's personal involvement in the actions or statements alleged, they are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 39.**

40. In Summer 2024, this vandalism escalated to damaging lug nuts on the Haugs' vehicle in their driveway, and an effort to cause a serious accident.

> **Answer:** **To the extent the factual allegations of paragraph 40 suggest or imply Bierly's personal involvement in the actions or statements alleged, they are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 40.**

41. Bierly was a contributor to the online discussion on multiple occasions.

> **Answer:** **Bierly admits that he occasionally made comments to other's posts regarding the area in question but never made any harassing, defamatory, obscene, threatening, or similar types of comments directed at the Haugs. Bierly otherwise denies the factual allegations of paragraph 41.**

42. The Haugs were, understandably, emotionally distraught at the organized campaigns to harass them and try to drive them from their property.

> **Answer:** **To the extent the factual allegations of paragraph 42 suggest or imply Bierly's personal involvement in the actions or statements alleged, they are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 42.**

## Malicious Prosecution

43. Plaintiffs hereby incorporate rhetorical paragraphs 1 – 42 by reference as though fully set forth herein.

> **Answer:** **Bierly incorporates by reference as though fully set forth herein all answers to allegations of the Haugs' Complaint.**

44. As previously described, Bierly had a long-standing grudge against Wayne and Anita Haug ("Anita").

> **Answer:** **Bierly denies the factual allegations of paragraph 44.**

45. Bierly had written multiple posts online trying to find a way to have Wayne arrested or fined over Wayne's claim to the Disputed Property.

> **Answer:** **Bierly denies the factual allegations of paragraph 45.**

46. Unknown Persons joined in as well, and their ideas and musings included contacting DNR over a buoy that went missing, claiming that Anita had damaged plant life along the lake, claiming that Wayne had cut down a tree situated on land belonging to the County of Starke, claiming that Wayne and Anita had improperly removed a picnic table from the Disputed Property, and, in one instance mentioning that, "Provoked or not provoked will lead to a battery charge either way if [Wayne] gets physical with anyone."

> **Answer:** **To the extent the factual allegations of paragraph 46 suggest or imply Bierly's personal involvement in the actions or statements alleged, they are denied. Bierly is without sufficient information to either admit or deny any remaining factual allegations of paragraph 46.**

47. Finally, on April 12, 2023, Bierly's hatred of the Haugs, combined with inspiration he took from the musings of Unknown Persons online, came to a head when he viciously attacked Wayne.

> **Answer:** **Bierly admits only that he and Wayne were involved in a physical altercation on the date alleged in which Wayne was the aggressor and Bierly defended himself. Any remaining factual allegations of paragraph 47 are denied.**

48. Bierly reported the actions to a police officer, intentionally lying to claim that Wayne was the aggressor in his report.

> **Answer:** **Bierly admits that he cooperated in answering the questions of a police officer following the encounter with Wayne, but denies that**

he made any initial "report" to law enforcement. Any remaining factual allegations of paragraph 48 are denied.

49. This resulted in Wayne being charged with the crime of battery.

**Answer:** **Upon information and belief, Bierly admits that Wayne was subject to criminal charges following the encounter. Bierly is without sufficient information to either admit or deny the remaining factual allegations of paragraph 49, and further states that he was not the only source of information to law enforcement regarding the encounter with Wayne.**

50. The police report at the time also made mention of a firearm, although Wayne was never armed at any point during the encounter and made no threat involving a firearm.

**Answer:** **To the extent the allegations of paragraph 50 purport to characterize the contents of a police report, they refer to the content of a written document which speaks for itself. Otherwise, Bierly denies that Wayne made no remarks concerning his possession and/or ownership of a firearm, and states that Wayne specifically stated something to the effect that he had a ".45." Otherwise, Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 50.**

51. At the time, Bierly knew that Bierly was, in fact, the initial aggressor in the conflict and had attacked Wayne repeatedly in an unprovoked manner.

**Answer:** **Bierly denies the factual allegations of paragraph 51.**

52. The underlying criminal matter, 75C01-2307-CM-000001, was dismissed pursuant to the State of Indiana's Motion on August 5, 2024.

**Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 52.**

53. When Wayne informed his employer of a pending hearing, he was terminated from his position he had held for thirty-five (35) years due to the criminal allegations against him.

   **Answer:** **Bierly is without sufficient information to either admit or deny the factual allegations of paragraph 53.**

## Defamation

54. Plaintiffs hereby incorporate rhetorical paragraphs 1 – 53 by reference as though fully set forth herein.

   **Answer:** **Bierly incorporates by reference as though fully set forth herein all answers to allegations of the Haugs' Complaint.**

55. On April 12, 2023, Bierly communicated that Wayne had committed the crime of battery to multiple people, including police officer.

   **Answer:** **Bierly admits that he cooperated in answering the questions of a police officer following the encounter with Wayne. Any remaining factual allegations of paragraph 55 are denied.**

56. This statement was made knowing it to be false at the time it was made.

   **Answer:** **Bierly denies the factual allegations of paragraph 56.**

57. As a direct and proximate result of Bierly's statements, Wayne lost his long-term position with his employer.

   **Answer:** **Bierly denies making any false statements regarding Haug and is without sufficient information to either admit or deny any remaining factual allegations of paragraph 57.**

58. Bierly made the statement solely out of malice for Wayne due to Wayne's claims to the Disputed Property, which Bierly bitterly opposed.

**Answer:** **Bierly denies the factual allegations of paragraph 58.**

WHEREFORE, Bierly prays that the Haugs take nothing by way of their complaint, that judgment be entered in favor of Bierly, and that the court afford Bierly any and all other appropriate relief in the premises.

>Respectfully submitted,
>
>/s/ Jacob M. O'Brien
>>Jacob M. O'Brien, I.D. #31445-09
>>Starr Austen & Miller, LLP
>>201 South Third Street
>>Logansport, IN  46947
>>(574) 722-6676
>>(574) 753-3299
>>obrien@starrausten.com
>
>/s/ Matthew J. Hagenow
>>Matthew J. Hagenow, # 22378-46
>>Newby, Lewis, Kaminski & Jones, LLP
>>916 Lincolnway
>>La Porte  IN  46350
>>Telephone (219) 362-1577
>>mjhagenow@nlkj.com
>
>ATTORNEYS FOR DEFENDANT
>TED BIERLY

## AFFIRMATIVE AND ADDITIONAL DEFENSES

1. The Haugs complaint fails to state a claim upon which relief can be granted.

2. Anita Haug, specifically, fails to state any claim upon which relief can be granted to her.

3. Bierly invokes the doctrine of self-defense.

4. Bierly's actions in response to Wayne's attack were reasonably necessary to protect and maintain Bierly's own safety and Bierly's actions were justified in all respects.

5. Wayne provoked Bierly's actions on April 12, 2023.

6. The Haugs' claims are barred, in whole or in part, by applicable statutes of limitation.

7. The Haugs' claims are barred, in whole or in part, by the equitable doctrine of laches.

8. Bierly asserts the doctrine of credit and set off.

9. Bierly reserves the right to introduce evidence of any adjustments to any medical charges alleged to have been incurred in connection with any injuries or ailments described in the Haugs' Complaint.

10. Bierly incorporates by reference, as if fully stated herein, and to the extent not otherwise stated herein, all affirmative defenses contemplated by Federal Rule of Civil Procedure 8.

11. Bierly reserves the right to assert additional defenses as discovery continues.

Respectfully submitted,

*/s/ Jacob M. O'Brien*

Jacob M. O'Brien, I.D. #31445-09
Starr Austen & Miller, LLP
201 South Third Street
Logansport, IN  46947
(574) 722-6676
(574) 753-3299
obrien@starrausten.com

        */s/ Matthew J. Hagenow*
        Matthew J. Hagenow, # 22378-46
        Newby, Lewis, Kaminski & Jones, LLP
        916 Lincolnway
        La Porte  IN  46350
        Telephone (219) 362-1577
        mjhagenow@nlkj.com

        ATTORNEYS FOR DEFENDANT
        TED BIERLY

## **DEFENDANT'S COUNTERCLAIM**

Defendant Ted Bierly ("Bierly"), by counsel, for his claim for relief against Plaintiff Robert Haug ("Haug") alleges and states as follows:

1. Bierly is now and at all relevant times has been a citizen of the State of Indiana and a resident of Starke County, Indiana.

2. Haug is now and at all relevant times has been a citizen and resident of the State of Iowa.

3. Haug is the owner of real estate located at 8025 N. Tippecanoe, Dr., Walkerton, in Starke County, Indiana.

4. On or about April 12, 2023, while Bierly was working as a volunteer on a project near Haug's property, Haug became upset, approached Bierly in a threatening and aggressive manner, pushed Bierly, and repeatedly struck Bierly in a rude and insolent manner.  In so doing, Haug acted in a reckless manner with wanton disregard for Bierly's life and safety.

5. Haug intentionally and recklessly caused harmful and offensive contact to Bierly when he pushed and then repeatedly punched Bierly causing injuries and aggravating Bierly's prior medical conditions.

6. Haug's actions are a direct and responsible cause of Bierly's injuries causing him to suffer damages including pain and suffering, medical bills, and lost wages.

7. Bierly seeks to recover all damages available to him under the law against Haug, including, but not limited to, reasonable medical and hospital expenses, lost earnings and wages, and other financial damages.

WHEREFORE, Ted Bierly requests judgment against Robert Haug in an amount sufficient to compensate him for the injuries and damages he suffered as a result of Haug's conduct and for all other just and proper relief.

Respectfully submitted,

*/s/ Matthew J. Hagenow*
Matthew J. Hagenow, # 22378-46
Newby, Lewis, Kaminski & Jones, LLP
916 Lincolnway
La Porte  IN  46350
Telephone (219) 362-1577
mjhagenow@nlkj.com

ATTORNEY FOR DEFENDANT
TED BIERLY

## JURY DEMAND

Bierly hereby demands a trial by jury as to all counts, claims, defenses, and theories so triable.

Respectfully submitted,

*/s/ Jacob M. O'Brien*
Jacob M. O'Brien

*/s/ Matthew J. Hagenow*
Matthew J. Hagenow

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, I served the following on counsel of record via electronic mail.

Scott Seville
Scott.seville@roseattorneys.com

Mark J. Roule
mjroule@nlkj.com

Matthew J. Hagenow
mjhagenow@nlkj.com

*/s/ Jacob M. O'Brien*
Jacob M. O'Brien, I.D. #31445-09
Starr Austen & Miller, LLP
201 South Third Street
Logansport, IN  46947
(574) 722-6676
(574) 753-3299
obrien@starrausten.com